Belknap,
No. 5432.

### G. Alda Spencer *v.* Laconia School District.

Argued January 4, 1966.
Decided March 30, 1966.

*Upton, Sanders & Upton* ( *Mr. Frederic K. Upton* orally ), for the plaintiff.

*Willard Martin,* city solicitor ( by brief and orally ), for the defendant.

DUNCAN, J. By contract dated April 13, 1962, the parties agreed upon the plaintiff's employment as a teacher for a period of three years, commencing September 15, 1962. She was as-signed to work in the kindergarten department at an agreed salary of $5,250 for the first year. The contract provided that salaries for the ensuing years should be those called for by the "Laconia Teachers' Salary Schedule and Scale for the Teacher."

The contract further provided by paragraph 3( c ) that the district might terminate the contract in accordance with RSA 189:13, 31 and 32, "subject to appeal, if the Teacher is removed by the Superintendent," and by paragraph 3( e ) that the con-tract could be cancelled "as of June 30 of any year by either party if notice in writing is given not later than April 15 of such year."

On April 15, 1963 the plaintiff was notified that her salary for the year 1963-1964, under the continuing contract, would be $5,400. On August 6, 1963 the board of education of the district voted to discontinue kindergartens for the next school year because of a projected reduction in the city appropriation for the schools for that year. On August 7, 1963, the plaintiff was notified that her position had been abolished for lack of funds. She was later advised that no teaching work of any kind would be available to her for the coming year.

The parties agree that this conduct of the school board con-stituted "a dismissal of the plaintiff or a termination of her em-ployment without her consent." Thereafter she obtained employ-ment in Massachusetts. Subsequently arrangements were made by the district which permitted restoration of kindergarten classes on a limited basis, staffed by three full-time and one part-time kindergarten teachers.

RSA 189:13 and 14, first enacted in 1905 ( Laws 1905, 59:1 ) provide as follows:

"189:13 Dismissal of teacher. The school board may dismiss any teacher found by them to be immoral or incompetent, or one who shall not conform to regulations prescribed; provided, that no teacher shall be so dismissed before the expiration of the period for which said teacher was engaged without having previously been notified of the cause of such dismissal, nor without having previously been granted a full and fair hearing.

"189:14 - - Liability of district. The district shall be liable in the action of assumpsit to any teacher dismissed in violation of the provisions of the preceding section, to the extent of the full salary for the period for which such teacher was engaged."

The first two questions transferred by the Trial Court relate to these provisions, and are as follows:

"1. Was the dismissal of the Plaintiff under the circumstances set forth in the Agreed Statement of Facts a violation of RSA 189:13?

"2. If question 1 is answered in the affirmative, is the Defendant entitled to have deducted from the damages prescribed by 189:14 the compensation the Plaintiff earned at other employment during the contract period?"

The plaintiff maintains that the provisions of section 13, *supra*, preclude all other grounds for dismissal by a school board, so that the district thereby became liable under section 14. The district maintains that the application of sections 13 and 14 is limited to dismissal for causes personal to the teacher, and that they have no application when, as in this case, dismissal is for reasons of economy. While this view finds support in cases such as *Funston* v. *District School Board,* 130 Ore. 82, where the Oregon statutes were construed, we are of the opinion that in the light of the history of our own legislation, the view advanced by the plaintiff should be adopted here.

Prior to 1885 ( Laws 1885, *c.* 43 ) the authority to hire teachers was vested in the prudential committees of school districts. R. S. ( 1842 ) *c.* 70, *s.* 10; G. L. ( 1878 ) *c.* 87, *ss.* 14, 19. At the same time, the superintending school committees of towns were given certain powers of dismissal, not unlike those now conferred by RSA 189:13. R. S. ( 1842 ) *c.* 73, *s.* 3; G. L. ( 1878 ) *c.* 89, *ss.* 7-9. Thus, throughout this period, the town committees were required to dismiss teachers who were "unfit to teach." R. S. ( 1842 ) *c.* 73, *s.* 3, *supra;* Laws 1858, *c.* 2088, *s.* 3; G. S. ( 1867 )

*c.* 81, *ss.* 7-9; G. L. ( 1878 ), *c.* 89, *ss.* 7-9. Originally the com-mittee could act only upon petition of a majority of the voters of the district, and after notice to the teacher and hearing. Laws 1845, *c.* 225, *s.* 1. In addition to the requirement that it should dismiss "unfit" teachers, it was authorized to dismiss if "in their judgment [dismissal] will best promote the interests of the dis-trict." *Id.*

From 1858 to 1867 the causes for which a superintending school committee might dismiss also included "other just cause." Laws 1858, *c.* 2088, *supra. Cf.* G. S. ( 1867 ) *c.* 81, *ss.* 7-9 *supra.* From 1858 to 1895, another ground for dismissal was that the teacher's services "were deemed unprofitable to any school." Laws 1858, *c.* 2088, *supra; Cf.* Laws 1895, *c.* 51.

The statutes consistently provided that a teacher dismissed because unfit to teach "shall be entitled to compensation until such dismission, but no longer." Laws 1845, *c.* 225, *s.* 1, *supra.*

It is a fair inference that the powers granted to town com-mittees to dismiss teachers hired by district committees were in-tended to be restricted to those from time to time specified by the statutes.

In 1885, the functions of the school committees of towns and of the prudential committees of districts were united in the "school board" of the district. Laws 1885, *c.* 43, *supra.* See *Wilcox* v. *Burnham,* 98 N. H. 64, 66; *Horne* v. *School District,* 75 N. H. 411. Thus the authority of a school board to dismiss a teacher continued to be limited to the grounds previously enumerated by prior statutes, although the requirements of a petition by the voters and notice and hearing were abandoned, as were the cri-teria of "other just cause" and the "best interests of the district." See P. S. ( 1901 ) *c.* 92, *ss.* 3, 4.

In this state of the law, the Superintendent of Public Instruction was moved to point out that teachers were subject to dismissal without notice or hearing, whenever a school board found them to be "unsuitable or incompetent"; and to urge that the laws "be amended so that the teachers' term of office [will] be more secure." 53d N. H. School Report ( 1903-4 ) 288. See also, 54th N. H. School Report 186-188, 194 ( 1905-6 ).

In 1905 the provisions now appearing in RSA 189:13, 14 took their present form. Laws 1905, *c.* 59, *s.* 1. They have remained unchanged although since 1919 superintendents have had general authority to remove a teacher "for cause" subject to appeal to

the Commissioner of Education ( RSA 189:31, 32; Laws 1919, c. 106, s. 12 ), and have been charged with the responsibility of nominating "all teachers" elected by school boards. RSA 189:39; Laws 1919, c. 106, s. 12, *supra.*

In the light of this history, and the interpretation of the somewhat parallel provision relating to the dismissal of pupils ( RSA 193:13; *Sweeney* v. *Young,* 82 N. H. 159, 162 ) we conclude that it was the legislative purpose in enacting what is now RSA 189:13, 14, to limit the authority of school boards with respect to the dismissal of teachers to the grounds specified by RSA 189:13. *Horne* v. *School District,* 75 N. H. 411, *supra.* See, Edwards, The Courts and the Public Schools ( Rev. *ed.* ) *pp.* 478, 481 ( 1955 ); Annot. 63 A.L.R. 1416. The first question transferred is answered in the affirmative. The plaintiff's dismissal was a violation of RSA 189:13, not for want of a hearing, but because she was dismissed for a cause not specified by the statute. *Sweeney* v. *Young, supra; Sarle* v. *School District,* 32 Ariz. 96. See *People* v. *Maxwell,* 177 N. Y. 494.

It follows that the district is liable under RSA 189:14 "to the extent of the full salary for the period for which [she] was engaged." *Horne* v. *School District, supra.* So far as we are aware, this provision has not been interpreted by any reported decision. Presumably it was occasioned, in part at least, by the fact that "the school board are trustees — not agents — of the district." *Id.,* 412. In our opinion the words "to the extent of" were intended to fix the "full salary" as the outside limit of recovery, rather than to require that it measure the damages without regard to aggravation or mitigation thereof. See *O'Dwyer* v. *Grove Service Corp.* ( Sup. Ct. ) 181 N. Y. S. 2d 338, 339. *Cf. Morrissey* v. *Holland,* 79 N. J. Super. 279 where the statute provided for recovery of "the salary . . . for the period covered by the illegal dismissal." We hold in answer to the second question transferred that the defendant is entitled to have the plaintiff's earnings after her dismissal deducted from her full salary for the contract period. 47 Am. Jur. 402, "Schools," s. 145; 78 C.J.S. 1123-25, "Schools & School Districts," s. 216.

The third question transferred is as follows: "Are the provisions of paragraph 3( e ) of the teacher's contract of April 13, 1962 . . . invalid because in conflict with RSA 189:14-a and 14-b"? The contract provision referred to was as follows: "( e ) That this contract may be cancelled as of June 30 of any year by either

party if notice in writing is given not later than April 15 of such year."

RSA 189:14-a provides as follows: "FAILURE TO BE RENOMINATED OR REELECTED. Any teacher who has a professional standards certificate from the state board of education and who has taught for one or more years in the same school district shall be notified in writing on or before March 15 if he is not to be renominated or reelected. Any such teacher who has taught for three or more years in the same school district and who has been so notified may request in writing within five days of receipt of said notice a hearing before the school board and may in said request ask for reasons for failure to be renominated or reelected. The school board, upon receipt of said request, shall provide for a hearing on the request to be held within fifteen days. The school board shall issue its decision in writing within fifteen days of the close of the hearing." RSA 189:14-b provides for a review of such a decision by the State Board of Education, whose decision shall be "final and binding upon both parties." Laws 1957, c. 285, s. 1.

These provisions resulted from a bill which was amended in both House and Senate before passage, and was described in the Senate as a "rewritten bill . . . not so far reaching as the original bill to which there was great opposition by school board members and citizens." As then described, the "new version" attempted to "give a certified teacher whose contract is not to be renewed . . . a fair hearing. We believe that this is a fair arrangement for protecting the teacher and for avoiding infringement of the rights of the school board." Journal of the Senate (1957) 688, 689. The bill was thereafter further amended to provide for review by the State Board. *Id.,* 1055.

We think that the inconsistencies between the contract provision and the statute are more fundamental than the mere discrepancy in the date of the required notice. The 1957 legislation was designed in part to afford greater security to the teacher. By enacting it, the Legislature doubtless gave consideration to the relative bargaining positions of the parties ( see *Manchester* v. *Guild,* 100 N. H. 507 ( March 26, 1957 )) and plainly concluded that the issue of renomination should not be left solely to the decision of local authorities. *S.* 14-b, *supra.* The provision of paragraph 3( e ) of the contract would in effect permit the defendant to nullify the 1957 statute and cannot be held valid.

*Sarle* v. *School District,* 32 Ariz. 96, *supra;* Edwards, The Courts and the Public Schools, *supra,* 478-480. Consequently the third question transferred is answered in the affirmative.

*Remanded.*

All concurred.